IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOE R. GONZALES
d/b/a BUILD RIGHT CONSTRUCTION,

    *Plaintiff/Counter-Defendant,*

v.    No. 2:23-cv-01071-GJF-KRS

JULIANNE McCABE,

    *Defendant/Counter-Plaintiff.*

## OPINION AND ORDER

This MATTER is before the Court on Plaintiff's Motion To Compel Defendant To Provide Her Expert Witness/Larry Medrano's Electronically Stored Information In A Reasonably Usable Form ("Motion") (Doc. 73). For the reasons that follow, the Motion is **DENIED**.

## Background

This is a construction-related dispute between a builder (Plaintiff) and a homeowner (Defendant). Plaintiff sued Defendant to recover money owed under the construction contract. Defendant responded by, among other things, filing a counterclaim alleging that Plaintiff failed to construct the Residence in accordance with the Site Plan contained in the Construction Drawings without a written change order concerning Plaintiff's deviation. Specifically, Defendant alleges that Plaintiff altered the location and orientation of the Residence. In response, Plaintiff alleges that the location and orientation of the Residence as presented in the Site Plan was frustrated due to factors such as the proximity of the Residence to a bluff on the eastern and northern portion of the Property, and the proximity of the Residence to the existing City utility lines on the northern portion of the Property.

On May 3, 2024, Plaintiff served Defendant with an expert report prepared by Victor J. Chavez, P.E. opining about what was and was not possible with respect to construction of the Residence in accordance with the Construction Drawings. Mr. Chavez stated in his report that the original construction documents did not include lot dimensions, and that he therefore asked Plaintiff to provide him with certain measurements required for his opinions, including the distance between the masonry wall on the north end of the Property and the face of the rock abutments supporting the retaining wall on the south end. (Doc. 75-1 at 3). Based on measurements apparently provided by Plaintiff, Mr. Chavez opined that the floorplan of the Residence "had to be rotated to meet the existing physical conditions" of the site. (*Id.* at 3).

Defendant sought to test the factual basis for Mr. Chavez's opinion by retaining a surveying professional, Larry W. Medrano, NMPS, CFedS, to take measurements of the Property. Mr. Medrano took his own measurements and opined that "the making of slight adjustments would have allowed the house to retain the orientation as designed and still fit on the property." (Doc. 75-2 at 13). Attached to his report were five .pdf documents consisting of surveys Mr. Medrano prepared to illustrate his findings. (Doc. 75-5). Plaintiff's counsel questioned Mr. Medrano at his deposition about missing dimensions of the rock buttresses encroaching on the southern boundary of the Property. Mr. Medrano explained that although he had not shown those dimensions in his report or on any of the surveys attached to the report, the information could be found in the CAD files[1] found on the USB flash drive he had provided at the start of the deposition. (Doc. 73 at 3;

---

[1] "CAD" refers to Computer Aided Drawing. *See Cochard v. Roehm Prod. of Am., Inc.*, No. 1-18-CV-00301-MSM-LDA, 2023 WL 1433092, at *1 (D.R.I. Feb. 1, 2023). "CAD drawings contain technical and precise information. When accessed with appropriate CAD software, digital CAD files provide the ability to make precise measurements within a 10,000th of a millimeter, provide the ability to determine angles between components, provide the ability to scale the product up or down, extend it, or add components from other .dwg files and bring them together, and provide the ability to meld multiple drawings together." *Id.*

Doc. 75-6 at 2 (Medrano Dep. 45)). Following the deposition, Mr. Medrano prepared amended versions of the .pdf attachments to his report with the additional measurements asked about during the deposition, which were then given to Plaintiff's counsel. (Doc. 74-2 at 5).

Not satisfied with the amended .pdf documents, Plaintiff's counsel reached out to Defendant's counsel about the contents of the flash drive provided at the beginning of Mr. Medrano's deposition. Specifically, Plaintiff's counsel stated that he could not open the CAD files on the drive without specialized software.[2] Plaintiff's counsel therefore requested that Defendant's counsel produce those files in a form reasonably usable to him. Defendant's counsel responded that, in addition to producing the original CAD files, Defendant had provided Plaintiff with the .pdf documents attached to Mr. Medrano's report, which reflected Mr. Medrano's work product using the CAD files. Defendant's counsel also stated that those .pdf documents had already been updated with the information Plaintiff desired about the dimensions of the rock buttresses closest to the south corner of the Property. Finally, Defendant's counsel stated that he did not believe it was possible to produce all of the CAD files in anything but their native form, as some of those files contained information that could not be translated into a .pdf document.

Plaintiff's counsel remains unsatisfied, stating that the amended .pdf documents only show a measurement of a rock buttress in one small area and not along the *full* south boundary line of the Property. Plaintiff believes areas not shown on the .pdf attachments would reveal further encroachments within the boundary of Defendant's Property, and claims that "[s]uch information is integral to Plaintiff's ability to adequately rebut Mr. Medrano's expert report." (Doc. 73 at 3).

---

[2] Plaintiff's Motion references "CAD, Trimble, KMZ, and 2 Coordinate files." (Doc. 73 at 8). Defendant's counsel represented at the motion hearing (and Plaintiff's counsel did not dispute) that all of these file types constitute "CAD" files. Accordingly, this opinion does not consider any other types of files or software.

3

Plaintiff argues that Defendant should be compelled to produce *all* of the CAD files in question (those found on the flash drive) in some form other than their native file format because the CAD files in their native form are not "useable" by him without the appropriate software. After Defendant's counsel stated the belief that there is no other format in which to produce the CAD files and asked Plaintiff to identify the format he is seeking, Plaintiff never indicated any other format. Nor does the Motion identify the format sought to be compelled. But in his reply and at the motions hearing, Plaintiff for the first time stated that production of all of the CAD files as .pdf documents would be acceptable to him. *See* (Doc. 78 at 11). In the alternative, Plaintiff states that he is willing "to visit Mr. Medrano's place of work to inspect the 'usable' files as a compromise and solution to the discovery issues discussed herein." (*Id.* at 8).

## Discussion

### A.  Rule 26

Because the CAD files in question constitute the work product of a retained expert witness (Mr. Medrano), the Court begins its analysis of Plaintiff's Motion with the required disclosures that must be made in connection with expert testimony under Federal Rule of Civil Procedure 26. Rule 26(a)(2) provides, in relevant part, that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). If an expert witness is "retained or specially employed to provide expert witness testimony" the disclosure must be in the form of a written report that includes in relevant part: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; and (iii) any exhibits that will be used to summarize or support them. FED. R. CIV. P. 26(a)(2)(B). The purpose of these disclosure requirements is to ensure that opposing parties have a reasonable opportunity to prepare for effective cross examination of their opponent's expert witnesses and perhaps arrange

for their own expert testimony. *See Chadwell v. United States*, No. 20-1372-JWB-BGS, 2024 WL 1834560, at *18 (D. Kan. Apr. 26, 2024) (citing *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191 (10th Cir. 2009) (quoting Fed. R. Civ. P. 26(a) advisory committee's notes to 1993 amendments)). While an incomplete or preliminary report does not comply with Rule 26(a)(2), the rules "do contemplate periodic supplementation, providing for both an update of the information contained in the report and the information provided through deposition of the expert testimony." *Id.* (internal quotation marks and citations omitted).

At issue here is whether Defendant complied with Rule 26's disclosure requirements by providing the underlying data, including the CAD data, used by Mr. Medrano in formulating his expert report. Plaintiff does not dispute that the data has been provided, or that he is able to ascertain the factual bases for Mr. Medrano's conclusions. Nor does he dispute that he is able to read and access the data actually utilized by Mr. Medrano in reaching his opinions, which data was provided to Plaintiff in the .pdf attachments (as amended) to Mr. Medrano's report. Because Mr. Medrano disclosed the data he consulted in native format, and disclosed the data on which he relied in both native *and* .pdf format, the Court finds that Defendant has satisfied her disclosure obligations under Rule 26(a)(2).[3]

---

[3] Plaintiff points out that there are more CAD files on the flash drive than .pdf documents that were produced, meaning that not every CAD file considered by Mr. Medrano in forming his opinions was also produced to Plaintiff in an alternative .pdf form. Plaintiff argues this discrepancy is evidence that Mr. Medrano and Defendant "cherry-picked" which data/information to produce to Plaintiff. (Doc. 78 at 2). But by producing the CAD files, Mr. Medrano disclosed *all* of the raw data he considered in forming his opinions, which is all that was required of him. *See Roemen v. United States*, No. 4:19-CV-04006-LLP, 2023 WL 6808348, at *5 (D.S.D. Oct. 16, 2023). Mr. Medrano went a step further and produced the data on which he actually relied in .pdf format. While Plaintiff may see the production of raw data on which Mr. Medrano did not rely in only its native format as "cherry-picking," there is no issue of failure to disclose here. Moreover, Plaintiff does not cite any case law that has applied a "reasonably usable" form requirement to the facts and data produced by an expert under Rule 26. *See, e.g., Amato Subaru of Am., Inc Aquino v. Subaru of Am., Inc.*, No. CV 22-990 (JHR/AMD), 2023 WL 7085095, at *3–4 (D.N.J. Sept. 27, 2023).

### B.      Procedural Issues Related to Rules 34 and 45.

Apart from Rule 26, Plaintiff argues that Defendant should be compelled to produce *all* of Mr. Medrano's raw data in what Plaintiff considers to be a "reasonably usable form," citing Federal Rule of Civil Procedure 34. Rule 34 states in relevant part that:

> (a)     *In General.* A party may serve on any other party a request within the scope of Rule 26(b):
>
> > (1)     to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
> >
> > > (A)     any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; ….

FED. R. CIV. P. 34(a)(1)(A). In further support of his "reasonably usable form" argument, Plaintiff cites subsection (b)(2) of Rule 34, which states in relevant part:

> (E)     *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> > ...
> >
> > (ii)     If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms[.]

FED. R. CIV. P. 34(b)(2)(E)(ii).

Before discussing the substance of Plaintiff's "reasonably usable form" argument, there are a number of procedural hurdles that must be addressed. For instance, Defendant argues that

Plaintiff is barking up the wrong tree because Rule 34 only applies to a party's request to another party for production of documents. The CAD files were produced by Mr. Medrano pursuant to a document subpoena in connection with his deposition,[4] not by Defendant in response to a Rule 34 discovery request. Thus, Rule 45, not Rule 34, would apply here. *See* FED. R. CIV. P. 34(c) ("NONPARTIES. As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.").

At first glance, this argument would not seem to get Defendant very far, because Rule 45 contains the same "reasonably usable form" requirement as Rule 34(b)(2)(E). *See* FED. R. CIV. P. 45(e)(1)(B) ("If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."). But Defendant's argument appears to be that Plaintiff's Motion is misdirected because it is Mr. Medrano, not Defendant, from and against whom relief should have been sought regarding the form of production for the disputed CAD files. Fair enough, except that Plaintiff also contends that the same files were requested *from Defendant* through a Rule 34 document production request, and, further, that Defendant cannot argue Mr. Medrano, as an expert witness specially retained to testify in the case on behalf of Defendant, is someone outside of Defendant's control. If Mr. Medrano is within Defendant's control, then any documents in his possession would be reachable through a document request to Defendant. *See* FED. R. CIV. P. 34(a)(1) (referring to documents "in the responding party's possession, custody, or *control*" (emphasis added)).

---

[4] *See* (Doc. 74-1 at 1, 4 (Subpoena Duces Tecum To Testify At A Deposition ("Subpoena"), directing Mr. Medrano to produce, among other things, his "entire file, including but not limited to … data, reports, research, …. and all documents upon which [he] relied … *or* any other written material contained in the file regarding any opinions rendered by [him] in this case") (emphasis added)).

Although Defendant has not addressed the issue, which is only briefly touched upon in Plaintiff's reply brief, Plaintiff would seem to be correct that Mr. Medrano's files are within Defendant's "control."[5] But Defendant is correct that the Motion sought only to enforce a Rule 45 subpoena, and thus technically Plaintiff's request in his reply brief to compel production of documents under Rule 34 is outside the scope of the relief sought by the Motion. And, as the Court pointed out during the motions hearing, any additional relief Plaintiff might seek through a motion to compel a Rule 34 document production request might be precluded at this stage of the proceedings, with the deadline for discovery motions having already expired. Defendant stressed at the motions hearing that Plaintiff's arguments based on Rule 34 were not properly before the Court because they were raised for the first time in Plaintiff's reply brief. While that may be technically true, the Court has the discretion to both construe the Motion liberally and depart from the general waiver rule applicable to arguments raised for the first time on reply. *See, e.g., Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992). And it would seem only fair to consider Plaintiff's Rule 34 document production request argument here, since Plaintiff raised the issue as a rebuttal to an argument in Defendant's response brief concerning the inapplicability of Rule 45 to a motion to compel brought against Defendant. The bigger issue for the Court is not that Plaintiff raised the issue in a reply brief but that he failed to attach the discovery requests on which he was

---

[5] *See, e.g., Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 654 (D. Kan. 2004) ("[I]t is not unusual for documents in the possession of a third party, closely connected to the litigation, to be subject to a Rule 34 request. Absent such expanded scope of production, a third party with a substantial interest in the litigation may be allowed to frustrate the rules of discovery to the disadvantage of the party seeking production and, ultimately, of the court." (internal quotation marks and footnotes omitted)).

relying.[6] The Court simply cannot determine on the present record whether Plaintiff's Rule 34 document production requests actually required the production of the CAD files in question.[7]

Given the lack of development of these issues in Plaintiff's Motion and supporting papers, the Court might hold that Plaintiff has not met his burden under Rule 37(a)(3)(B)(iv) of demonstrating that Defendant failed to produce documents as requested under Rule 34, and leave it at that. *See also Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 880 & n. 9 (10th Cir. 1997) (broad, conclusory statements amount to a waiver for failure to adequately develop an argument). But the Court finds Defendant's argument concerning the original Rule 45 basis for the Motion—that enforcement of a Subpoena must be sought against Mr. Medrano, not

---

[6] *See* N.M.D. Loc. R-Civ. 37.1 ("**Relief Sought in Protective Order and Motion to Compel.** A party seeking relief pursuant to Fed. R. Civ. P. 26(c) or 37(a) must attach to the motion a copy of: **(a)** the interrogatory, [or] request for production ….; and **(b)** the response or objection thereto.").

[7] In his reply brief, Plaintiff cites Document Production Request No. 11, which Plaintiff represents requested Defendant to produce "each and every document referenced in your responses to the Interrogatories propounded contemporaneously herewith." (Doc. 78 at 5). Read in conjunction with Interrogatory No. 2, Plaintiff argues that Defendant was required to produce "all documents received from the expert regarding this matter," and "all documents, e-mails, and text messages related to any communication you have had with any expert related to this lawsuit." (*Id.* at 4). Yet it appears that even Plaintiff is uncertain whether his discovery requests to Defendant cover the CAD files, as one of his counsel's letters to opposing counsel addressing the issue cited Document Production Request No. 7, rather than Document Production Request No. 11, which supposedly sought production of "all photographs, motion pictures, recordings, videotapes, maps, drawings, diagrams, audio or visual representations, or any other tangible or demonstrative evidence concerning or touching upon any fact, issue, claim, defense or alleged damages in this lawsuit." (Doc. 74-2 at 9). In any event, even if the CAD files fall under Interrogatory No. 2/Document Request No. 11, "all documents received from the expert," Defendant in fact produced those files in the form in which they were given to Defendant by Mr. Medrano. In the situation where a party is asked to produce not its own, but a third party's files, it is at least open to debate whether the responding party would be required to do anything other than provide the requesting party with exactly what the responding party received from the third-party, which in this case were the CAD files found on the flash drive. *Cf. Roemen v. United States*, No. 4:19-CV-04006-LLP, 2023 WL 6808348, at *7 (D.S.D. Oct. 16, 2023) ("Some courts believe that because of the relationship between a party and its retained expert, the party may have the practical ability to obtain documents or information from its expert. But implicit in this assumption is the expert's possession of the information sought.") (internal citations omitted).

Defendant—to be somewhat formalistic given Defendant's supervision and control over Mr. Medrano as someone who has been specially retained by Defendant to provide expert testimony in the case. As a practical matter, Defendant's counsel engaged with Plaintiff in good faith discussions over this discovery dispute as if he was speaking on behalf of Mr. Medrano and without instructing Plaintiff to contact Mr. Medrano directly. Accordingly, the Court declines to resolve Plaintiff's Motion on the technical procedural grounds discussed above, and instead will address the "reasonably useable form" argument Plaintiff makes, which can be said to be based on language found in both Rule 34(b)(2)(E) *and* Rule 45(e)(1)(B).

### C. The "Reasonably Useable Form" Requirement

Under Rule 34(b)(1)(C), a requesting party "may specify the form or forms in which electronically stored information [ESI] is to be produced." FED. R. CIV. P. 34(b)(1)(C). Where the requesting party has not done so, however, the producing party may produce the ESI in the form "in which it is ordinarily maintained or in a reasonably useable form" FED. R. CIV. P. 34(b)(2)(E). Here, Plaintiff did not originally specify the form in which the ESI was to be produced, so Defendant was authorized to produce it in the form in which it is kept, i.e., the CAD files.

Of course, Plaintiff was free to object after-the-fact to the form of ESI production, which is what he did. The parties then engaged in good faith discussions in an attempt to resolve the issue. Plaintiff seems to suggest that Defendant needed to have made some sort of formal objection to Plaintiff's request to produce the CAD files in a form other than their native form. *See* (Doc. 78 at 2-3 (arguing that "at no time did counsel for [Defendant] object to [Plaintiff's] mechanism of requesting the subject files"). But because Plaintiff's original request did not specify the form of production, there was nothing to which Defendant needed to object. Instead, Defendant was entitled to follow the default rule, which is to produce the documents *either* in the form in which

10

they are "ordinarily maintained" (native form), *or* in another "reasonably usable form." FED. R. CIV. P. 34(b)(2)(E)(ii); *see, e.g. Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc*., 248 F.R.D. 556, 558 (N.D. Ill. 2008) ("ADC did not specify a form for the production of the document at issue, so Autotech had the option of producing it in the form in which it was ordinarily maintained, or in a reasonably usable form.").[8]

In arguing that Defendant has a duty to produce the CAD files in a different form once Plaintiff raised an objection, Plaintiff relies almost exclusively on *S2 Automation LLC,* 2012 WL 3656454. But in that case, the plaintiff requested that production of ESI be in a specific format. *Id.* at *22. The defendant produced the requested information in the form of .pdf documents, which was neither the requested format nor the native format for the ESI in question. *Id.* at *23. The court held that the defendant must re-produce the information *either* in its native format, or in the format plaintiff requested. *Id.* at *21. Here, Plaintiff has not requested production in any other specific format, and the format in which the ESI was produced is the native format for that information. If anything, the facts in *S2 Automation LLC* support *Defendant's* argument that production of the CAD files in their original native format was proper.

---

[8] Rule 34 does direct that, in the written response to the production request, the responding party must state the form it intends to use for producing electronically stored information if the requesting party does not specify a form (or if the responding party objects to a form that the requesting party specifies). "Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs. A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form." *S2 Automation LLC v. Micron Tech., Inc*., No. CIV 11-0884 JB/WDS, 2012 WL 3656454, at *18 (D.N.M. Aug. 9, 2012). But that requirement only applies to documents produced pursuant to Rule 34. No similar requirement exists under Rule 45, as there is no requirement of a written response to a subpoena. The responding party to a subpoena that does not specify the form for producing ESI merely produces the requested files in either the form in which they are ordinarily maintained or in a reasonably usable form.

Nevertheless, Plaintiff relies on the advisory committee notes to Rule 34(b) quoted in full in the *S2 Automation* case. In particular, Plaintiff points to the following language:

> The rule does not require a party to produce electronically stored information in the form it which it is ordinarily maintained, as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

FED. R. CIV. P. 34(b), advisory committee's note to 2006 amendment. It is not clear why Plaintiff thinks this language supports the Motion. It seems to suggest that the "reasonably useable" form requirement only applies if the information is "convert[ed] … from the form in which it is ordinarily maintained to a different form." Defendant did not "convert" the CAD files into a different form from the one in which they are "ordinarily maintained," so the comment does not apply to this case. Because Defendant produced the CAD files in their native form, the "reasonably useable" alternative formulation does not need to be addressed here at all. Indeed, the Court finds it telling that Plaintiff has not cited *any* case in which production in native format was deemed unreasonable. *Compare Haywood v. Wexford Health Sources, Inc.,* No. 16 CV 3566, 2021 WL 2254968, at *9 (N.D. Ill. June 3, 2021) (where court found that NOT producing in native format was sanctionable). Instead, *S2 Automation* as well as other cases citing to the advisory committee note language in question involve situations where the responding party converted ESI to a format *other than native*, and the issue was whether the non-native format was a "reasonably useable" format.

In general, the term "reasonably useable format" refers to the accessibility of the ESI in question. *See, e.g., U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("In general, inaccessible ESI 'is not readily useable and must be restored to an accessible state before the data is usable.'" (quoting *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 320 (S.D.N.Y. 2003)). "Consideration of ESI's access[i]bility involves two discrete determination[s]: first, the extent to which the data at issue is actually inaccessible, and second, the apparent reasons for this status." *Id.* The extent to which data is actually inaccessible is addressed in subdivision (a)(1) of Rule 34, which refers to electronic information that may require "translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A). As the advisory committee notes explain, "[u]nder some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information." *Id*., advisory committee's note to 2006 amendment. The advisory notes provide no further guidance on the circumstances that would require a responding party to provide technical support, or what kind of technical support would satisfy the reasonableness standard that the committee note states would apply. Plaintiff too only mentions this language in passing without discussing its meaning as applied to the facts of this case. The meaning of this comment, however, would seem to be crucial as the issue in this case is whether Defendant should be required to provide Plaintiff with "technical support, information on application software, or other reasonable assistance to enable [him] to use the [CAD] information." The Court's own research has revealed that this language was discussed in a case involving proprietary software which was unavailable to the requesting party. *See Wilson v. Conair Corp.*, No. 1:14-CV-00894-WBS, 2015 WL 1994270, at *4 (E.D. Cal. Apr. 30, 2015). Here the software needed to open the CAD files is not inaccessible in the same way as the data in

13

*Wilson,* where only proprietary software would provide access to it. In fact, the software needed to open CAD files appears to be widely available, as CAD files are common in the construction industry.[9] The Court therefore does not see how it can be said that the files in question are not in "reasonably useable" form such that Defendant should be required to "translate" those files into some different format.

Plaintiff's argument for why the CAD files are not in a "reasonably useable" form goes to the second inquiry regarding why the files are inaccessible. His argument is that they are inaccessible *to him* because *he* does not *currently* have access to the software needed to open those files. But the Court infers from the record and the parties' arguments that the software in question is reasonably *available*, and Plaintiff does not detail what efforts he or his counsel have undertaken to obtain assistance in accessing and reviewing the native format CAD files. In fact, Plaintiff's own expert, Mr. Chavez, is an engineer in the construction industry. Plaintiff waited until his reply brief to reveal that Chavez is retired and no longer has access to CAD software. But the Court fails to see how that circumstance should change the requirements of the Federal Rules such that Defendant would have to then "translate" the information for Plaintiff. There are various avenues available to Plaintiff to obtain the help he needs to open the files in question, and he should seek out one of those avenues. So long as the software needed to open the files is commonly available, the files produced in their native form are accessible by Plaintiff and already in a "reasonably

---

[9] *See, e.g.,* https://www.sw.siemens.com/en-US/technology/computer-aided-design-cad/ (last visited Nov. 26, 2024) (CAD software "is used to create, analyze or change two or three-dimensional designs and models in a digital environment rather than using manual drafting methods. Architects, engineers, commercial and industrial designers, and artists often use CAD."); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.,* 685 F. Supp. 2d 1001, 1005 (N.D. Cal. 2009) (CAD software "is used in design applications by architects, engineers, manufacturers, and others …. to create and document designs and visualize, simulate, and analyze real-world performance early in the design process by creating prototypes in digital format.").

useable" form within the meaning of the Federal Rules. *See D'Onofrio v. SFX Sports Grp., Inc.,* 254 F.R.D. 129, 134 (D.D.C. 2008) (requiring electronically stored information to be produced in a form in which it is "capable of being read on a computer using [ ] commonly available ... software").

Finally, the Court rejects Plaintiff's proposed alternative remedy of ordering Mr. Medrano to "make himself available for an in-person inspection" of the CAD files. Plaintiff does not cite any legal authority supporting this request. And the Court finds Defendant's objection that Mr. Medrano's time and privacy should not be imposed on in such a way without any corresponding legal duty to be well taken.

### D. <u>Attorney's Fees</u>

Rule 37(a) provides for an award of expenses and attorneys' fees to the moving party if the Court grants a party's motion to compel, or an award of expenses to the party opposing the motion if the motion to compel is denied. *See* FED. R. CIV. P. 37(a)(5)(A)-(B). Both sections of the rule, however, state that the Court must not award such costs and fees if "other circumstances make an award of expenses unjust." *Id.* Both parties have requested attorney's fees and costs in connection with the Motion. Plaintiff's request, of course, is denied because the Court finds in Defendant's favor on the Motion. Insofar as Defendant's request for expenses is concerned, the Court finds that the issues raised in the Motion concerning the "reasonably useable form" requirement of the Federal Rules, as applied to ESI of an expert witness, to be fairly unique and not widely dealt with in the case law. The Court finds that Plaintiff has asserted non-frivolous arguments as to these issues and that, under present circumstances, an award of expenses to Defendant would be unjust. Accordingly, each party shall be responsible for their own fees and costs associated with the Motion.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion To Compel Defendant To Provide Her Expert Witness/Larry Medrano's Electronically Stored Information In A Reasonably Usable Form ("Motion") (Doc. 73) is DENIED, as is each party's request for attorney's fees in connection with the Motion.

IT IS SO ORDERED this 11th day of December 2024.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE